# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Kenny Faulk,

          Plaintiff,

                   Case No. 1:21-cv-1850-MLB

v.

Dimerco Express USA Corp.,

          Defendant.

_____/

## <u>ORDER</u>

This matter is before the Court on Plaintiff's Motion for Leave to Serve Discovery, Motion in Limine, and Notice of Objection to Defendant's Use of Evidence at Trial (Dkts. 98; 101; 117); and Defendant's Six Motions in Limine (Dkts. 102; 103; 104; 105; 106; 107). The Court held a pretrial conference on September 20, 2023, addressed several issues, and reserved ruling on certain aspects of Plaintiff's Motion in Limine pending further briefing.  Having considered those briefs and additional arguments from counsel (Dkts. 128; 129; 130), the Court memorializes its rulings.

### 1. Plaintiff's Motion for Leave to Serve Discovery as to Defendant's Financial Status (Dkt. 98)

The Court grants Plaintiff's motion to the extent and for the reasons stated at the pretrial conference.

### 2. Plaintiff's Motion in Limine (Dkt. 101)

Plaintiff alleges that, in September 2019, Defendant rescinded a job offer it had made to him after learning he is black.  (Dkts. 10 at 4–8; 89 at 36.)  He sued Defendant for discrimination under 42 U.S.C. § 1981 and seeks, among other things, damages for emotional distress, claiming he suffered "emotional distress, humiliation, and other indignities" from Defendant's conduct.  (Dkt. 10 at 5.)

According to Defendant, in July 2019, Plaintiff was arrested on rape charges while traveling from Atlanta to Toronto for a business meeting.  (Dkt. 108 at 5-6.)  He remained in police custody for several days without providing his employer at the time (Livingston International) any information.  (*Id.*)  Livingston thus terminated him for cause and without any severance benefits.   (*Id.*)   Plaintiff hired a lawyer who wrote Livingston a letter asking it to reconsider the severance decision and (falsely) stated Plaintiff had missed the trip because he fell ill while in route to Toronto and had remained home afterwards to care for his sick

mother.  (*Id.*; *see* Dkt. 108-1.)  Plaintiff does not really dispute these facts. He admitted at his deposition that he had been arrested while in route to Toronto and had not missed the trip or subsequent work due to any illness.  (Dkt. 108 at 6.)  Defendant did not know about Plaintiff's arrest or lie to Livingston when it rescinded Plaintiff's job offer.

Plaintiff seeks to exclude evidence of his arrest for rape (and other charges) and the untruthful letter his lawyer wrote Livingston. (Dkts. 101; 112; 117; 128; 129.)  Defendant says evidence of the Plaintiff's arrest is relevant to demonstrate an alternative cause for emotional distress and the lie to Livingston is relevant as to Plaintiff's credibility. (Dkt. 108 at 3–10.)

### A.    Evidence of Plaintiff's Arrest

Plaintiff has not been convicted of rape, as it appears the charges are still pending.  Generally a witness's credibility may not be impeached by evidence of his or her prior arrests, accusations, or charges.  *See Michelson v. United States*, 335 U.S. 469, 482 (1948).  That is because an "[a]rrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness.  It happens to the innocent as well as the guilty."  *Id.*  In other words, that fact of an arrest

provides no evidence the person committed the crime. But Defendant is not trying to show Plaintiff committed the rape. It only wants to show that he suffered the accusation. So that principle does not really answer the question.

Another rule potentially relevant here is Federal Rule of Evidence 404(b), which prohibits the introduction of a person's prior crimes or bad acts when used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evidence of prior bad acts, however, may be admitted if it passes a two-part test. First, the bad-act evidence must have special relevance, meaning that it is not admitted solely to show propensity. *United States v. Covington*, 565 F.3d 1336, 1341 (11th Cir. 2009); Fed. R. Evid. 404(b)(1). The rule includes a list of possible issues to which such evidence might be relevant, specifically saying other act evidence may be admitted to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). That list, however, "is not exhaustive." *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008). Second, even if relevant to a proper purpose, the evidence must clear Federal Rule of Evidence 403,

which provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other concerns, "unfair prejudice." Fed. R. Evid. 403. But, again, Defendant is not seeking to admit evidence that Plaintiff committed the rape; so, a Rule 404(b) analysis is not really the answer either.

The Court concludes it need merely consider Federal Rule of Evidence 402 (which says relevant evidence is admissible) and Rule 403 (which says not to apply Rule 402 if the prejudicial impact of the evidence substantially outweighs is probative value). Evidence of Plaintiff's pending charges is relevant to Plaintiff's claim for compensatory damages, particularly his request for emotional distress damages. That Plaintiff was arrested for rape and the trauma surrounding that event (including having spent considerable time in police custody and then living under the cloud of the pending charges) provides context for Plaintiff's allegation that he suffered emotional distress—largely at the same time—because of Defendant's allegedly discriminatory activity. Evidence of the former might certainly impact the jury in consideration of the latter, particularly as the jury considers the context of the events surrounding any emotional distress and the nexus between the

Defendant's actions and any emotional distress.  *See Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 n.5 (11th Cir. 2005) (explaining factors relevant to determine the propriety of awarding compensatory damages for emotional distress, including the degree of emotional distress and the context of the events surrounding the emotional distress).  Put simply, the jury could consider Plaintiff's arrest on rape charges was the actual (or at least partial) cause of any emotional distress he suffered at the time Defendant revoked the employment offer.

As part of this, the Court determines the prejudice of the jury learning about the criminal charges (including the nature of the charges) does not substantially outweigh the probative value of the evidence for assessing emotional distress.  Indeed, the nature of the charges has strong probative value, as a jury might well find living with the stigma of rape charges far more stressful than living under the cloud of less reprehensible charges.  Plaintiff may propose reasonable instructions for the jury at the time the evidence is admitted to ensure its proper consideration of the evidence and to prevent unfair prejudice.

In a supplemental filing, Plaintiff cites *Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1 (1st Cir. 2022) and *Barber v City of*

6

*Chicago*, 725 F.2d 702 (7th Cir. 2013) to argue the Court should exclude evidence of Plaintiff's arrest.  (Dkt. 128 at 4–7.)  Neither case suggests that result.  *Gonpo* merely affirmed the trial court's decision to exclude evidence an employer sought to admit of pending criminal charges against an employee; it did not conclude the admission of those charges would have been erroneous.  *See Gonpo*, 41 F.4th at 7.  Moreover, the employer in that case sought to introduce the evidence to attack the employee's credibility, to which the trial court found it "tenuously relevant."  *Id.*  The evidence was not being admitted (as here) to contextualize Defendant's claim of emotional distress or provide another cause for any such distress.

The plaintiff in *Barber* sued the City of Chicago for (among other things) emotional distress damages, claiming two of its officers used excessive force in falsely arresting him in 2005.  *Barber*, 725 F.3d at 705.  The district court allowed the defendant to admit evidence of the plaintiff's arrest and conviction in 2010 to show a "supervening cause of any emotional distress" the defendant experienced.  *Id.* at 711.  The Court of Appeals concluded that was a mistake.  On its face, that conclusion might seem relevant here.  But the plaintiff in *Barber* did not allege broad

emotional distress.  He merely alleged he was fearful of the two officers because of the way in which they had mistreated him.  He explained he was not fearful of all police, just the two officers who arrested him in 2005.  As a result of that narrow claim, the Court of Appeals concluded evidence of other police encounters (not involving those two officers) was irrelevant and should not have been admitted.  *Id.* at 713.  Interestingly, the Court explained that, had plaintiff cast his claim for emotional-distress damages more broadly "in the hopes of obtaining a larger verdict," the probative value of his prior arrest "would have been much greater" in showing an alternative cause for emotional distress.  *Id.* "The larger the chunk of one's life that is claimed to have been negatively impacted by emotional distress, the more important it is to explore other events that may have contributed to the individual's loss."  *Id.*

The parties have not suggested Plaintiff will somehow limit his claim for emotional distress as the plaintiff did in *Barber*.  If that occurs at trial, such that the trauma of being arrested for rape and facing charges of rape could not be an alternative cause of Plaintiff's alleged emotional distress, the Court will revisit the issue.

## B.     Evidence of Plaintiff's Lie to Livingston

Plaintiff represents that he will testify at trial.   Assuming Defendant can tie Plaintiff to the lie to Livingston, the Court finds the evidence is admissible as it relates to Plaintiff's character for untruthfulness under Federal Rule of Evidence 608(b).   Rule 608(b) permits inquiry, at the court's discretion, into specific instances of a witness's conduct that are "probative of truthfulness or untruthfulness." Fed. R. Evid. 608(b).   As noted above, Rule 403 circumscribes the court's discretion by requiring the court to weigh the probative value of the evidence against the danger of unfair prejudice from it.   *See* Fed. R. Evid. 403.

Plaintiff's lie to Livingston is probative of his untruthfulness as a witness.   Fed. R. Evid. 608(b); *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994) ("Acts probative of untruthfulness under Rule 608(b) include such acts as forgery, perjury, and fraud.").   Further, the probative value of Plaintiff's lie to Livingston is not substantially outweighed by the prejudicial impact given the similarity in circumstances and timing of the lie.   Fed. R. Evid. 403.   He lied to Livingston to obtain post-employment benefits.

Here, he seeks compensation from Defendant arising from the termination of his employment offer.  Both involve the employment context.  And Plaintiff's lie to Livingston was not temporally remote, as it occurred within a few months of when Defendant rescinded Plaintiff's offer of employment.  *Cf. Ad-Vantage Tel. Directory Consultants, Inc.*, 37 F.3d at 1464 ("Temporally remote acts are only weakly probative of the witness's current credibility.").  The lie to Livingston also was apparently not a rash or momentary mistake, given that Plaintiff hired a lawyer to convey his lies to Livingston.

Plaintiff argues Federal Rules of Evidence 408 and 608(b) preclude Defendant from introducing his lawyer's letter or its content.  (Dkts. 112 at 3–4; 117 at 5–6; 129 at 1–3.)  The Court rejects Plaintiff's contention that the letter is inadmissible under Rule 408.  (*See* Dkt. 129 at 1–3.) That rule does not apply because the letter is not an offer of settlement; it is a legal demand.  (Dkt. 108-1 at 2.)  And even if Rule 408 applied, subsection (b) allows the Court to admit the evidence for another purpose, such as proving a witness's bias.  Fed. R. Evid. 408(b).

While Rule 608(b) allows cross-examination of a witness regarding certain prior bad acts to attack a witness's character for truthfulness, the

Eleventh Circuit has said "[i]f the witness denies the conduct, such acts may not be proved by extrinsic evidence and the questioning party must take the witness' answer unless the evidence would be otherwise admissible as bearing on a material issue of the case." *United States v. Mathews*, 168 F.3d 1234, 1244 (11th Cir. 1999).  The application of that ban on extrinsic evidence may not be as broad as Plaintiff suggests. Apart from any attempt to show character for untruthfulness, Defendant would likely be permitted to expose any false testimony provided by Plaintiff at trial to attack Plaintiff's credibility.  *See United States v. Burnette*, 65 F.3d 591, 607–608 (11th Cir. 2023) ("The distinction between a witness's credibility or bias, on the one hand, and his character for truthfulness, on the other, is real, as both the Supreme Court and this Court have recognized."); *United States v. Carthen,* 906 F.3d 1315, 1325 (11th Cir. 2018) (W. Pryor, C.J., concurring) (emphasizing that, as amended, 608(b) "does not speak to anything other than the use of extrinsic evidence to support or attack a witness's character for truthfulness").  The Court will consider the admissibility of the letter (or other extrinsic evidence) at trial if necessary and with argument from counsel.   But the Court suspects Rule 608(b) would not prevent

Defendant from using the letter (in appropriate circumstances) to impeach Plaintiff by contradiction. *Id.* at 1324.

### 3. Defendant's First Motion in Limine (Dkt. 102)

Defendant seeks to exclude evidence of its foreign ownership and management, including and comments on the etymology of its employee's names. Plaintiff agrees this evidence is irrelevant other than as incidental to its presentation of evidence. (Dkt. 109 at 7.) By way of example, Defendant explains that some of the documentary evidence "infers or references" Defendant's foreign ownership. (*Id.*)

As explained at the pretrial conference, the Court agrees with both parties and concludes discussion of Defendant's ownership is irrelevant unless necessary in the context of Plaintiff's evidence. Defendant may object if it believes Plaintiff has crosses this line.

### 4. Defendant's Second, Third, Fourth, and Sixth Motions in Limine (Dkts. 103, 104, 105, 107)

In other motions in limine, Defendant seeks to exclude (1) evidence of an employment claim filed against it by Renee Howard, a prior employee who will also be a witness in this case; (2) any mention of lawyers or law firms involved in this case or Ms. Howard's case; (3) argument in violation of the so-called "Golden Rule" or something

called the "Reptilian Brain Theory"; and (4) evidence of, or reference to, Defendant's liability insurance and evidence.  Plaintiff agrees these motions should be granted, other than Defendant's argument about the "Reptilian Brain Theory," which it refers to as a "vague discussion of the use of a trial strategy." (Dkts. 109 at 9, 10, 12.)  The Court thus grants those motions as uncontested.

Regarding any "Reptilian Brain Theory," the Court agrees with Plaintiff that Defendant's explanation of this concept (including at the pretrial conference) is confusing.  The Court thus denies Defendant's motion as to that issue.  Defendant may make relevant objections as necessary to police any conduct it deems inappropriate.

### 5. Defendant's Fifth Motion in Limine (Dkt. 106)

Defendant seeks to exclude any evidence as to its size and financial condition. (Dkt. 106.)  Plaintiff says some of this information is relevant in showing the status of the employees who allegedly made the discriminatory decisions.  The Court agrees.  As to Defendant's financial

condition, the Court denies Defendant's motion to the extent and for the

reasons stated at the pretrial conference.

**SO ORDERED** this 5th day of October, 2023.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE