IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KENNY FAULK, )
)
Plaintiff, )
v. ) CIVIL ACTION
) FILE NO. 1:21-CV-01850-MLB
)
DIMERCO EXPRESS (USA) CORP., )
)
Defendant. )
________________________________)

---

BEFORE THE HONORABLE MICHAEL L. BROWN
TRANSCRIPT OF PROCEEDINGS
MAY 9, 2024

---

Proceedings recorded by mechanical stenography
and computer-aided transcript produced by

JANA B. COLTER, FAPR, RDR, CRR, CRC
Realtime Systems Administrator
Official Court Reporter
2394 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, Georgia 30303
(404) 215-1456

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Amanda Farahany<br>Severin Roberts<br>Patrick Reid<br>Attorneys at Law |
| For the Defendant: | Cynthia Burnside<br>Nicholas Boyd<br>Steven Stastny<br>David Jones<br>Attorneys at Law |

\- - -

P R O C E E D I N G S

(Atlanta, Fulton County, Georgia, May 9, 2024, in open court.)

THE COURT: All right. We're here for a hearing that I wanted to have on the motions, the post-trial motions.

May I have appearances starting with counsel for the plaintiff?

MR. ROBERTS: Severin Roberts, Amanda Farahany and Patrick Reid for the plaintiff, Your Honor.

THE COURT: And for the defendant?

MS. BURNSIDE: Cynthia Burnside, Nicholas Boyd from Holland & Knight.

And I have Mr. Stastny and Mr. Jones here as well for Dimerco.

THE COURT: Okay. Thank you.

All right. Did we tell them exactly what we wanted to talk about for the hearing? No? Okay. Sometimes I put more in the notice.

We have worked through most of the post-trial motions. And there is one sticking point that we are not -- we don't think you-all have addressed adequately, and that is the challenge to the punitive damages. There's two things in

that regard.

First of all, I don't actually think what we're talking about is remittitur, which I think is the way the parties --

Isn't that the way the defendant has couched it?

MR. ROBERTS: I think so.

THE COURT: Okay. I actually don't think that we're dealing with remittitur. I think remittitur is where -- I think all I can do in that regard if it's remittitur, under that rule, is to either grant a new trial or with the agreement of the plaintiff reduce the award to something that the plaintiff agrees to.

Does anybody think that that's wrong?

Is anybody here familiar -- what is the name of Judge Geraghty's case?

LAW CLERK: *Capital Inventory*.

THE COURT: *Capital Inventory*.

Are you-all aware of that case?

MR. ROBERTS: I'm not aware of that case, Your Honor. But you're principle -- the way you've stated that principle is accurate, it's either a unilateral right to a new trial or an acceptance of a reduced award based on what the --

THE COURT: Right.

MR. ROBERTS: Yeah.

THE COURT: So that takes us to sort of a different

issue. I mean, if you read that case -- you can find that case at 2024 Westlaw 1383228. And she does a very good job of looking at what rule would allow remittitur and what rule does not.

Okay?

And I think it's worth -- I'm not sure it's worth -- there's much that can be done about that. I think the defendant has moved under the wrong rule, but I think I have nevertheless the authority to consider it under the correct rule.

Anything that the defense wants to say in that regard?

MS. BURNSIDE: Your Honor, I'm processing, but --

THE COURT: Sure.

MS. BURNSIDE: -- what rule would you suggest that we should have moved under?

THE COURT: I think you've moved under 59; is that right?

MS. BURNSIDE: Yes, Your Honor.

THE COURT: I think it's 50; is that right?

LAW CLERK: Yes.

THE COURT: Yes.

MS. BURNSIDE: Your Honor, forgive me, but Rule 50 is what?

THE COURT: I think that's the one it should be

under. I think you're challenging the maintainability of the punitive damages, which is actually a challenge under Rule 50.

What does the plaintiff say about that?

MR. ROBERTS: Your Honor, I don't know the answer on that, because I've been going under -- I've been going under the concept you described for remittitur, which is that rule, I'm not -- and I don't have an answer on your question, though, Your Honor.

THE COURT: I mean, 59 is to alter or amend a judgment. If you look at her order, what she comes to the conclusion of, and I think she's right, I don't think she's way out there in that regard, she concludes that under 59, the judge can either grant a new trial, or if the parties agree, amend the judgment.

Whereas 59 gives the Court more authority over what it can do.

COURT REPORTER: 59?

THE COURT: I'm sorry. Yes. Thank you. Ms. Colter even understands it. 50 gives the Court more authority.

Okay?

You can look at that and you can see whether you agree or disagree with that.

Let me read to you part of what she cites. This is a case that she cites that also reads this: The parties dispute whether this statutory-cap based challenge is properly brought

under 50 or 59.

To the extent the issue is whether the amount is sustainable as a matter of law, that is, under a statutory cap or the Constitution, the motion arises under Rule 50.

But with regard to whether it should be reduced via remittitur, it arises under Rule 59. So that if you're looking at a Constitutional issue, it's 50.

Okay?

MS. BURNSIDE: I would say, Your Honor, that you are correct, we did address a potential reduction or elimination of punitive damages substantively in our brief pursuant to a motion under Rule 59.

We do move that the Court also include in our motion -- or deem the motion to be also a Rule 50 motion in addition to the Rule 59 motion.

THE COURT: Sure. Is there any problem with that, Mr. Roberts?

MR. ROBERTS: Your Honor, well, they didn't assert so we would object, but we understand, Your Honor, that you may feel differently, obviously, so...

THE COURT: Yes. But they're raising the concept. I mean, they're raising the idea that it is not a sustainable punitive damages award because the conduct doesn't warrant it and the ratio is out of scope.

Isn't that the key to the defense argument?

MS. BURNSIDE: Yes, Your Honor, that is one of them.

THE COURT: So why couldn't I still decide those issues?

I'm asking Mr. Roberts that.

MR. ROBERTS: Your Honor, I'm sure you could.

THE COURT: Say again.

MR. ROBERTS: I believe, yes, you could.

THE COURT: Okay. I think so, too.

So that is not why I wanted to talk about this. What I really want you to do -- I don't think either party has adequately discussed the analysis of the Gore factors. I've worked or we have worked our way through most of the other issues in this case, but we're working through the Gore factor analysis.

Do you-all know what I'm talking about in that regard?

MR. ROBERTS: Absolutely, Your Honor.

MS. BURNSIDE: Yes, Your Honor.

THE COURT: Here is what the plaintiff says in that regard. And of course, what Gore says you need to do is you need to discuss things like the level of reprehensibility and what are some of the things from some of the cases that make it more reprehensible.

Here is what the plaintiff says in that regard, and I'm quoting from their response brief at 25.

At trial, exhaustive evidence was presented establishing that Dimerco egregiously knowingly and intentionally violated federal law by discriminating on the basis of race. See discussion above, Page 1 to 7. In fact, nearly every single factor that may be considered for the imposition of punitive damages was supported by overwhelming evidence.

MR. ROBERTS: Your Honor, if I may.

THE COURT: Yeah.

MR. ROBERTS: I was trying to be respectful of the page limitation.

THE COURT: You should be.

MR. ROBERTS: Yeah.

THE COURT: But you have to make an argument. What you're saying to me is, Judge, go look at what we've said up there. You do the analysis under Gore and you decide whether it's reprehensible.

MR. ROBERTS: Your Honor, I would agree with you. And I apologize for that.

THE COURT: Okay.

MR. ROBERTS: I thought about that afterwards, and yes.

THE COURT: The page limit is the page limit. And I don't want to expand the page limits most of the time. But you wrote it somewhere else. It needs to be applied there.

And there was none of that from the defense. The defense has the burden, but when we're talking about how bad was somebody, the person who wants to show that somebody was bad here is the plaintiff trying to show the defendant was bad. That's not to say that the plaintiff has the burden. The burden is put otherwise, at this point in the case, on the analysis.

But whether the harm caused was physical as opposed to economic, there's been no discussion of that. Whether the tortious conduct evidence of indifference to or reckless disregard of the health or safety of others, there's been no discussion of that. And the other ones either.

Now, I think you can make arguments on this. And I think you can make arguments that are -- if you look at a case that was cited by the defense in their reply but not discussed is the *Williams v. First Advantage*, 947 F.3d 735. It has got a very good discussion by the Eleventh Circuit of those types of factors. And I think that's what needs to be done in this case.

And then the second thing that needs to be done is some type of effort to engage on what the ratio is. The ratio in this case -- I think the Supreme Court says four is pretty safe. Right?

Or four is maybe the top end of safe. I don't know what the words are from the Supreme Court. I'm talking much

more casually here.

We're at 7.6, right?

Yes, sir.

MR. ROBERTS: Your Honor, you've got a 1981 case from the Eleventh Circuit with a 9.1 ratio.

THE COURT: I understand. But I want to see a real discussion of that.

MR. ROBERTS: Yes, Your Honor.

THE COURT: I think that's the case that's got really, really outrageous facts.

MR. ROBERTS: And I would note, Your Honor, in the *Bogle v. McClure* case, the Eleventh Circuit sustained $2 million per plaintiff in punitives, which is over $3 million in today's dollars.

THE COURT: What was the ratio?

MR. ROBERTS: That one is just a little over four, I believe.

THE COURT: Yes, so you see -- but that's what you've got to do. You've got to engage in that analysis, where I feel like what you-all did was expect me to go do that analysis. And I like to be involved and I like to get into the details. And we're not afraid to do that. But I need you guys to do it first on either side.

I shouldn't have to do it. And it seemed like maybe because of the number of other issues that were raised, these

two things, which are really the big deal, I mean, maybe -- there was a lot of punitive damages in this case. And it is a high ratio. And it is not, I don't know, a mail-it-in-at-the-end-of-the-brief type argument. And I don't want it to be that way.

And I think that if you look at those factors that I've just started to read, some of those factors are kind of more applicable or they arise from a case -- let me find the document I want to look at -- they arise more from the type of case that this is not.

I mean, when you talk about whether it's economic or physical, reckless disregard of health or safety of others, and this is not a health and safety case.

But, but arguably what he did or what the defense did was indifference that was reckless or intentional of anti-discrimination laws, and maybe that is just the same.

Maybe you can argue that while this doesn't risk health and safety, what that factor is, what that second thing in evaluating reprehensibility is whether what somebody did was not just messed up under the law, didn't just violate the law, but violated it recklessly or with a conscious indifference to it.

Do you see what I'm saying?

So I want you to engage in that. Whether the target of the conduct was financially vulnerable, I don't know that

he was financially vulnerable, but, you know, perhaps that is getting to the concept of you have a big party and a little party.

Or perhaps that's getting to the concept that you have a person who is being misled as to why they were terminated and would have less of an opportunity to understand that they might have been mistreated. Maybe that's what that concept is getting to there.

Right?

The target is reprehensibility. We have from these other cases these lists of four or five things that maybe are set in a specific case, but maybe they get to a concept, maybe the idea, whether the conduct involved repeated actions or was an isolated incident, I don't know if that's -- I don't think we have a lot of evidence of that here.

But what we do have maybe is the same kind of thing, if it's there, I don't recall all the details, but I seem to recall that the woman who was testifying who let the plaintiff know what had happened to him had been trying to warn the defendant company for some time about the wrongfulness of the conduct. And had been stiff-armed, had said you don't understand what we're doing. You don't understand, there's a reason for it. You don't understand, we need to do this. All of which is antithetical to what they're allowed to do.

My point being there are arguments to be made there.

Maybe something like -- maybe this is not even in here, but intentional malice, trickery, deceit or accident, maybe that falls under the intention, maybe that's covered by one of these other ones, but I don't even think this is one of the listed factors about who made the decision.

Right?

I mean, does anybody think it would be less reprehensible -- or let me put it this way: Which one of those conducts is more reprehensible, you have a manager in an area who hires a person one underneath them and violates the company policy -- or, I'm sorry, doesn't hire somebody and in not hiring somebody doesn't hire that person because he or she is African-American, and is open about it, and so therefore, punitive damages are assessed. This is the way that person does it.

Is that more reprehensible -- or, I'm sorry -- is it more reprehensible if I told you that the person who made the decision was three levels higher, at the top of the company, and there was another person in the company that was in on it, and so it was at a high level, the intentional conduct.

Is there anybody that doesn't think the level of the person who makes -- who violates the law might have something to do with reprehensibility? I think so.

I mean, you can violate the hiring laws by a low-level person discriminating in a hiring decision. But you

can also violate it by somebody higher who sets up like our plan, hire white people to market to white people.

And I'm not -- I know these are all facts that the defense doesn't like. And there's another side to it.

So what I'm going to do is I'm going to give the plaintiff seven days to file something that talks about the Gore factors and in some way a discussion of the appropriate ratio. If the ratio is on the high end, defend it for being on the high end. I can make a decision in that regard.

But you have to engage. If the best you can do is say here are cases that are at five, we think ours at 7.6 is still okay, say that.

But do something on the ratios and something on the Gore factors with citations to the record. Your brief had citations to depositions. I'm assuming that all of those deposition portions were read into the record; is that right?

MR. ROBERTS: Yes, Your Honor.

THE COURT: Okay. And I'm relying upon the defense, if you think they've put something in here that wasn't in the trial, that's your job.

Okay?

But I am assuming when I read it --

Ms. Colter, you don't take down depositions read back and forth, do you?

COURT REPORTER: Not videos, but if they are read in,

I do.

THE COURT: Okay. So if they're read in, I think here what did we have, I think we had videos; is that right?

MR. ROBERTS: We had a couple of videos and one transcript, Your Honor.

THE COURT: All right. So when you're talking about the transcript, if it's been read, then you ought to find it in Ms. Colter's documents.

Okay?

But I'm going to rely upon the two of you to tell me if there's some dispute about what the trial record was.

But I'm going to make them go first. The defense has the burden. But I'm going to make the plaintiff go first in this regard because they're the ones that ought to be marshaling this evidence that you-all then can respond to.

Because I understand, I'm putting it one way, and I'm not -- I understand that there is another side to it with the defense. And that is your job to bring those points up in lessening the sort of reprehensibility score.

Okay? Everybody understand?

MS. BURNSIDE: Yes, Your Honor.

MR. ROBERTS: Yes, Your Honor.

THE COURT: Did we say we were going to give them seven days. Seven days. And then you-all have seven days to respond. Ten pages max. And ten pages max.

Okay? Any questions about that?

MS. BURNSIDE: No, Your Honor.

MR. ROBERTS: No, Your Honor. Thank you.

THE COURT: Okay. That's all I had.

Anything else we need to talk about from anybody?

MS. BURNSIDE: I don't think -- not from the defense, Your Honor.

MR. ROBERTS: Just one question, Your Honor.

Is that seven calendar days, so next Thursday? Okay.

THE COURT: Yes. Do you want until next Friday? Take until next Friday.

MR. ROBERTS: Okay. Sure. Thank you, Your Honor.

THE COURT: And then you can have until the following Friday, if you need until Monday or Tuesday, just let me know.

Okay?

Because that only gives you five days, really, once you take it to the following Tuesday.

MS. BURNSIDE: Your Honor, I would appreciate if we could have until Tuesday because we have an all lawyers meeting on this weekend.

THE COURT: Yes. That's fine. I don't like messing up --

MS. BURNSIDE: I appreciate that.

THE COURT: The practice of law is hard enough. And my wife still practices law. And it's real easy to say you

have a week, but really what you have is five days then.

MS. BURNSIDE: Yeah.

THE COURT: So take until that following Tuesday.

What's that following Tuesday?

Or you can have until Wednesday, because that means you'll get Wednesday morning, you'll get all of Tuesday.

MS. BURNSIDE: So then the plaintiffs would have until the 17th and then we would have until the 29th?

THE COURT: Yes. Okay. Questions?

MR. ROBERTS: No, Your Honor.

MS. BURNSIDE: No.

THE COURT: All right. Thank you-all very much.

And you don't have to get into the 50 and 59 issue.

MS. BURNSIDE: Okay.

THE COURT: I think I'm okay on that. I don't think I need any briefing on that.

MS. BURNSIDE: Okay. Thank you, Your Honor.

MR. ROBERTS: Thank you, Your Honor.

(Whereupon, the proceedings were adjourned at 10:35 a.m.)

REPORTERS CERTIFICATE

I, Jana B. Colter, Official Court Reporter for the United States District Court for the Northern District of Georgia, with offices at Atlanta, do hereby certify:

That I reported on the Stenograph machine the proceedings held in open court on May 9, 2024, in the matter of *Kenny Faulk v. Dimerco Express (USA) Corp*., Case Number 1:21-CV-01850-MLB; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript is a true and accurate record of the proceedings.

This the 10th day of May, 2024.

/s/ Jana B. Colter, FAPR, RDR, CRR, CRC
Official Court Reporter

**COURT REPORTER: [2]** 6/17 15/25
**LAW CLERK: [2]** 4/16 5/21
**MR. ROBERTS: [26]**
**MS. BURNSIDE: [18]** 3/14 5/13 5/15 5/19 5/23 7/9 8/1 8/18 16/21 17/2 17/6 17/18 17/23 18/2 18/7 18/11 18/14 18/17
**THE COURT: [42]**

**$**

**$2 [1]** 11/12
**$3 [1]** 11/13

**-**

**-- what [1]** 5/15

**/**

**/s [1]** 19/18

**1**

**10:35 [1]** 18/20
**10th [1]** 19/14
**1383228 [1]** 5/2
**1456 [1]** 1/22
**17th [1]** 18/8
**1981 [1]** 11/4
**1:21-CV-01850-MLB [2]** 1/5 19/10

**2**

**2024 [5]** 1/12 3/4 5/2 19/8 19/14
**215-1456 [1]** 1/22
**2394 [1]** 1/21
**25 [1]** 8/25
**29th [1]** 18/8

**3**

**30303 [1]** 1/22

**4**

**404 [1]** 1/22

**5**

**50 [9]** 5/20 5/23 6/2 6/19 7/1 7/4 7/7 7/14 18/13
**59 [10]** 5/17 6/9 6/12 6/15 6/17 7/1 7/6 7/12 7/15 18/13

**7**

**7.6 [2]** 11/2 15/11
**735 [1]** 10/16
**75 [1]** 1/21

**9**

**9.1 [1]** 11/5
**947 [1]** 10/16

**A**

**a.m [1]** 18/21
**about [17]** 3/20 4/3 5/7 6/3 8/9 8/15 9/21 10/2 12/11 13/20 14/5 14/13 15/6 16/6 16/11 17/1 17/5
**above [1]** 9/4
**Absolutely [1]** 8/17
**acceptance [1]** 4/22
**accident [1]** 14/2
**accurate [2]** 4/21 19/12
**ACTION [1]** 1/4
**actions [1]** 13/13
**actually [3]** 4/2 4/7 6/2
**addition [1]** 7/15
**address [1]** 7/10
**addressed [1]** 3/24
**adequately [2]** 3/24 8/11
**adjourned [1]** 18/20
**Administrator [1]** 1/20
**Advantage [1]** 10/16
**afraid [1]** 11/22
**African [1]** 14/13
**African-American [1]** 14/13
**afterwards [1]** 9/21
**again [1]** 8/6
**agree [3]** 6/13 6/22 9/18
**agreement [1]** 4/11
**agrees [1]** 4/12
**aided [1]** 1/18
**all [20]**
**allow [1]** 5/3
**allowed [1]** 13/24
**also [4]** 6/24 7/13 7/14 15/1
**alter [1]** 6/9
**am [1]** 15/22
**Amanda [2]** 2/2 3/11
**amend [2]** 6/9 6/14
**American [1]** 14/13
**amount [1]** 7/2
**analysis [6]** 8/11 8/14 9/16 10/7 11/19 11/21
**another [3]** 14/19 15/4 16/17
**answer [2]** 6/4 6/7
**anti [1]** 12/16
**anti-discrimination [1]** 12/16
**antithetical [1]** 13/24
**any [3]** 7/16 17/1 18/16
**anybody [5]** 4/13 4/14 14/7 14/21 17/5
**Anything [2]** 5/11 17/5
**apologize [1]** 9/19
**appearances [2]** 1/23 3/9
**applicable [1]** 12/8
**applied [1]** 9/25
**appreciate [2]** 17/18 17/23
**appropriate [1]** 15/7
**are [15]** 3/23 4/18 7/9 8/22 10/14 10/25 12/1 12/7 13/11 13/25 14/14 15/3 15/11 15/11 15/25
**area [1]** 14/10
**arguably [1]** 12/14
**argue [1]** 12/17
**argument [3]** 7/25 9/14 12/4
**arguments [3]** 10/13 10/14 13/25
**arise [2]** 12/8 12/9
**arises [2]** 7/4 7/6
**armed [1]** 13/21
**as [4]** 3/16 7/3 10/8 13/5
**asking [1]** 8/4
**assert [1]** 7/18
**assessed [1]** 14/14
**assuming [2]** 15/15 15/22
**ATLANTA [4]** 1/2 1/22 3/4 19/6
**Attorneys [2]** 2/4 2/7
**authority [3]** 5/9 6/15 6/19
**award [3]** 4/11 4/22 7/23
**aware [2]** 4/18 4/19

**B**

**back [1]** 15/23
**bad [3]** 10/2 10/4 10/5
**based [2]** 4/22 6/25
**basis [1]** 9/4
**be [15]** 5/7 5/25 7/5 7/14 9/5 9/10 9/12 9/25 10/18 10/20 11/21 12/5 13/25 14/7 16/14
**because [9]** 6/5 7/23 11/25 14/12 16/14 16/16 17/16 17/19 18/5
**been [8]** 6/5 6/5 10/9 10/11 13/7 13/19 13/21 16/7
**BEFORE [1]** 1/11
**being [3]** 13/5 13/25 15/8
**believe [2]** 8/7 11/17
**best [1]** 15/10
**big [2]** 12/1 13/2
**Bogle [1]** 11/12
**Boyd [2]** 2/5 3/14
**brief [4]** 7/11 8/25 12/4 15/14
**briefing [1]** 18/16
**bring [1]** 16/18
**brought [1]** 6/25
**BROWN [1]** 1/11
**burden [4]** 10/2 10/5 10/6 16/13
**Burnside [2]** 2/5 3/14

**C**

**calendar [1]** 17/9
**can [17]** 4/9 5/1 5/7 6/13 6/16 6/21 6/21 10/13 10/14 12/17 14/24 15/1 15/9 15/10 16/15 17/13 18/5
**cap [2]** 6/25 7/3
**Capital [2]** 4/16 4/17
**case [20]**
**Case Number [1]** 19/9
**cases [3]** 8/22 13/11 15/11
**casually [1]** 11/1
**caused [1]** 10/8
**CERTIFICATE [1]** 19/1
**certify [1]** 19/6
**challenge [3]** 3/25 6/2 6/25
**challenging [1]** 6/1
**Circuit [3]** 10/17 11/5 11/12
**citations [2]** 15/14 15/15
**cited [1]** 10/15
**cites [2]** 6/23 6/24
**CIVIL [1]** 1/4
**COLTER [5]** 1/19 6/18 15/23 19/4 19/18
**Colter's [1]** 16/8
**comes [1]** 6/10
**company [4]** 13/20 14/11 14/18 14/19
**computer [1]** 1/18
**computer-aided [1]** 1/18
**concept [6]** 6/6 7/21 13/2 13/4 13/8 13/12
**concludes [1]** 6/12
**conclusion [1]** 6/11
**conduct [6]** 7/23 10/10 12/25 13/13 13/21 14/20
**conducts [1]** 14/9
**connection [1]** 19/10
**conscious [1]** 12/21
**consider [1]** 5/9
**considered [1]** 9/5
**Constitution [1]** 7/4
**Constitutional [1]** 7/7
**CORP [2]** 1/6 19/9
**correct [2]** 5/9 7/10
**couched [1]** 4/5

**C**

could [3] 8/5 8/7 17/19
couldn't [1] 8/2
counsel [1] 3/9
County [1] 3/4
couple [1] 16/4
course [1] 8/20
court [12] 1/1 1/20 3/5 6/15 6/19 7/13 10/22 10/25 19/4 19/5 19/8 19/19
Courthouse [1] 1/21
covered [1] 14/3
CRC [2] 1/19 19/18
CRR [2] 1/19 19/18
CV [2] 1/5 19/10
Cynthia [2] 2/5 3/14

**D**

damages [7] 3/25 6/2 7/11 7/23 9/6 12/2 14/14
David [1] 2/6
day [1] 19/14
days [7] 15/6 16/24 16/24 16/24 17/9 17/16 18/1
deal [1] 12/1
dealing [1] 4/8
deceit [1] 14/2
decide [2] 8/2 9/16
decision [4] 14/5 14/18 14/25 15/9
deem [1] 7/14
defend [1] 15/8
defendant [7] 1/7 2/5 3/13 4/5 5/8 10/4 13/20
defense [11] 5/11 7/25 10/1 10/2 10/15 12/14 15/4 15/18 16/12 16/18 17/6
deposition [1] 15/16
depositions [2] 15/15 15/23
described [1] 6/6
details [2] 11/22 13/17
did [8] 3/19 7/10 11/20 12/14 12/14 12/19 16/3 16/23
didn't [2] 7/18 12/20
different [1] 4/25
differently [1] 7/20
DIMERCO [4] 1/6 3/17 9/2 19/9
disagree [1] 6/22
discriminating [2] 9/3 14/25
discrimination [1] 12/16
discuss [1] 8/21
discussed [2] 8/11 10/15
discussion [6] 9/4 10/9 10/12 10/17 11/7 15/7
dispute [2] 6/24 16/11
disregard [2] 10/11 12/12
DISTRICT [4] 1/1 1/1 19/5 19/5
DIVISION [1] 1/2
do [24]
document [1] 12/9
documents [1] 16/8
does [6] 4/13 5/2 5/3 6/3 14/7 14/15
doesn't [6] 7/23 12/17 14/11 14/12 14/21 15/4
doing [1] 13/22
dollars [1] 11/14
don't [24]
done [3] 5/7 10/18 10/20
down [1] 15/23
Drive [1] 1/21

**E**

easy [1] 17/25
economic [2] 10/9 12/11
effort [1] 10/21
egregiously [1] 9/2
either [6] 4/10 4/21 6/13 8/10 10/12 11/23
Eleventh [3] 10/17 11/5 11/12
Eleventh Circuit [3] 10/17 11/5 11/12
elimination [1] 7/10
else [2] 9/25 17/5
end [4] 10/24 12/4 15/8 15/9
engage [4] 10/21 11/19 12/24 15/10
enough [1] 17/24
establishing [1] 9/2
evaluating [1] 12/19
even [3] 6/19 14/1 14/4
every [1] 9/5
Everybody [1] 16/20
evidence [5] 9/1 9/7 10/10 13/15 16/15
exactly [1] 3/19
exhaustive [1] 9/1
expand [1] 9/24
expect [1] 11/20
EXPRESS [2] 1/6 19/9
extent [1] 7/2

**F**

F.3d [1] 10/16
fact [1] 9/4
factor [3] 8/13 9/5 12/18
factors [7] 8/11 10/18 12/6 12/7 14/5 15/7 15/14
facts [2] 11/10 15/3
falls [1] 14/3
familiar [1] 4/14
FAPR [2] 1/19 19/18
Farahany [2] 2/2 3/11
FAULK [2] 1/3 19/9
federal [1] 9/3
feel [2] 7/20 11/20
file [2] 1/5 15/6
financially [2] 12/25 13/1
find [3] 5/1 12/8 16/7
fine [1] 17/21
first [5] 4/2 10/16 11/23 16/12 16/13
five [4] 13/11 15/11 17/16 18/1
following [4] 17/13 17/17 18/3 18/4
foregoing [1] 19/12
forgive [1] 5/23
form [1] 19/11
forth [1] 15/24
four [4] 10/22 10/24 11/16 13/11
Friday [3] 17/10 17/11 17/14
Fulton [1] 3/4

**G**

GEORGIA [4] 1/1 1/22 3/4 19/6
Geraghty's [1] 4/15
get [5] 11/21 13/12 18/6 18/6 18/13
getting [3] 13/2 13/4 13/8
give [2] 15/5 16/23
gives [3] 6/15 6/19 17/16
go [4] 9/15 11/20 16/12 16/13
going [8] 6/5 6/5 15/5 15/5 16/10 16/12 16/13 16/23
good [2] 5/2 10/17
Gore [6] 8/11 8/13 8/20 9/16 15/7 15/14
got [5] 10/16 11/4 11/9 11/19 11/19
grant [2] 4/10 6/13
guys [1] 11/23

**H**

had [8] 13/19 13/19 13/21 13/21 15/14 16/3 16/4 17/4
happened [1] 13/19
hard [1] 17/24
harm [1] 10/8
has [7] 4/5 5/8 8/10 10/2 10/5 10/16 16/12
have [32]
he [3] 12/14 13/1 14/12
health [4] 10/11 12/12 12/13 12/18
hearing [3] 3/7 3/20 19/11
held [1] 19/8
her [1] 6/10
here [12] 3/7 3/16 4/14 8/19 8/24 10/4 11/1 13/15 14/1 15/11 15/19 16/3
hereby [1] 19/6
high [4] 12/3 14/20 15/8 15/9
higher [2] 14/18 15/1
him [1] 13/19
hire [3] 14/11 14/12 15/2
hires [1] 14/10
hiring [3] 14/12 14/24 14/25
Holland [1] 3/15
Honor [32]
HONORABLE [1] 1/11
how [1] 10/2

**I**

I'm [24]
I've [4] 6/5 6/5 8/11 12/7
idea [2] 7/22 13/13
imposition [1] 9/6
incident [1] 13/14
include [1] 7/13
indifference [3] 10/10 12/15 12/22
intention [1] 14/3
intentional [3] 12/15 14/2 14/20
intentionally [1] 9/3
Inventory [2] 4/16 4/17
involved [2] 11/21 13/13
is [73]
Isn't [2] 4/5 7/25
isolated [1] 13/14
issue [4] 5/1 7/2 7/7 18/13
issues [3] 8/3 8/13 11/25
it [38]
it's [11] 4/9 4/21 5/6 5/6 5/20 7/7 9/17 12/11 13/17 16/7 17/25

**J**

JANA [3] 1/19 19/4 19/18
job [3] 5/2 15/20 16/18
Jones [2] 2/6 3/16
judge [3] 4/15 6/13 9/15
Judge Geraghty's [1] 4/15
judgment [2] 6/10 6/14
just [7] 11/16 12/7 12/16 12/20 12/20 17/8 17/14

**K**

KENNY [2] 1/3 19/9
key [1] 7/25
kind [2] 12/7 13/16

## K

Knight [1] 3/15
know [10] 6/4 8/15 10/24 12/3 12/25 13/1 13/14 13/19 15/3 17/14
knowingly [1] 9/2

## L

law [9] 2/4 2/7 7/3 9/3 12/20 12/21 14/22 17/24 17/25
laws [2] 12/16 14/24
lawyers [1] 17/19
less [2] 13/6 14/7
lessening [1] 16/19
let [5] 6/23 12/8 13/18 14/8 17/14
level [4] 8/21 14/20 14/21 14/25
levels [1] 14/18
like [9] 8/21 11/20 11/21 11/21 11/24 14/1 15/1 15/4 17/21
limit [2] 9/23 9/23
limitation [1] 9/11
limits [1] 9/24
listed [1] 14/5
lists [1] 13/11
little [2] 11/16 13/2
look [6] 6/10 6/21 9/15 10/14 12/6 12/9
looking [2] 5/3 7/7
lot [2] 12/2 13/15
low [1] 14/25
low-level [1] 14/25

## M

machine [1] 19/7
made [3] 13/25 14/5 14/17
mail [1] 12/4
maintainability [1] 6/1
make [7] 8/22 9/14 10/13 10/14 15/9 16/12 16/13
makes [1] 14/22
malice [1] 14/2
manager [1] 14/9
market [1] 15/2
marshaling [1] 16/15
matter [2] 7/3 19/8
max [2] 16/25 16/25
may [8] 1/12 3/4 3/9 7/19 9/5 9/8 19/8 19/14
maybe [14] 10/24 11/24 12/1 12/16 12/17 13/7 13/11 13/12 13/12 13/16 14/1 14/1 14/2 14/3
McClure [1] 11/12
me [9] 5/23 6/23 9/15 11/20 12/8 14/8 16/10 17/14 19/11
mean [7] 5/1 6/9 7/22 12/1 12/11 14/7 14/24
means [1] 18/5
mechanical [1] 1/17
meeting [1] 17/20
messed [1] 12/20
messing [1] 17/21
MICHAEL [1] 1/11
might [2] 13/7 14/22
million [2] 11/13 11/13
misled [1] 13/5
mistreated [1] 13/7
MLB [2] 1/5 19/10
Monday [1] 17/14
more [10] 3/21 6/15 6/19 8/23 11/1 12/8 12/9 14/9 14/16 14/17
morning [1] 18/6
most [3] 3/22 8/12 9/24
motion [6] 7/4 7/12 7/14 7/14 7/14 7/15
motions [3] 3/8 3/8 3/23
move [1] 7/13
moved [3] 5/8 5/16 5/17
Mr [1] 3/16
Mr. [3] 3/16 7/17 8/4
Mr. Jones [1] 3/16
Mr. Roberts [2] 7/17 8/4
Ms. [3] 6/18 15/23 16/8
Ms. Colter [2] 6/18 15/23
Ms. Colter's [1] 16/8
much [3] 5/7 10/25 18/12
my [2] 13/25 17/25

## N

name [1] 4/14
nearly [1] 9/5
need [7] 8/20 8/21 11/22 13/23 17/5 17/14 18/16
needs [3] 9/25 10/18 10/20
nevertheless [1] 5/9
new [3] 4/10 4/21 6/13
next [3] 17/9 17/10 17/11
Nicholas [2] 2/5 3/14
no [8] 1/5 3/20 10/9 10/11 17/2 17/3 18/10 18/11
none [1] 10/1
NORTHERN [2] 1/1 19/5
not [20]
note [1] 11/11
notice [1] 3/21
Now [1] 10/13
number [2] 11/25 19/9

## O

object [1] 7/19
obviously [1] 7/20
offices [1] 19/6
Official [3] 1/20 19/4 19/19
okay [23]
once [1] 17/16
one [11] 3/23 5/25 8/1 11/16 14/3 14/4 14/8 14/10 16/4 16/16 17/8
ones [3] 10/12 14/4 16/14
only [1] 17/16
open [3] 3/4 14/13 19/8
opportunity [1] 13/6
opposed [1] 10/8
order [1] 6/10
other [5] 8/12 10/12 11/25 13/11 14/4
others [2] 10/11 12/12
otherwise [1] 10/6
ought [2] 16/7 16/14
our [4] 7/11 7/13 8/12 15/1
ours [1] 15/11
out [2] 6/12 7/24
outrageous [1] 11/10
over [3] 6/15 11/13 11/16
overwhelming [1] 9/6

## P

page [5] 9/4 9/11 9/23 9/23 9/24
Page 1 [1] 9/4
pages [2] 16/25 16/25
part [1] 6/23
parties [3] 4/4 6/13 6/24
party [3] 8/10 13/2 13/3
Patrick [2] 2/3 3/12
people [2] 15/2 15/2
per [1] 11/13
perhaps [2] 13/1 13/4
person [9] 10/3 13/5 14/10 14/12 14/14 14/17 14/19 14/22 14/25
physical [2] 10/8 12/12
plaintiff [15] 1/4 2/2 3/10 3/12 4/11 4/12 6/3 8/19 8/24 10/4 10/5 11/13 13/18 15/6 16/13
plaintiffs [1] 18/7
plan [1] 15/2
point [3] 3/23 10/6 13/25
points [1] 16/18
policy [1] 14/11
portions [1] 15/16
post [2] 3/8 3/22
post-trial [2] 3/8 3/22
potential [1] 7/10
practice [1] 17/24
practices [1] 17/25
presented [1] 9/1
pretty [1] 10/22
principle [2] 4/20 4/20
problem [1] 7/16
proceedings [6] 1/11 1/17 18/20 19/8 19/10 19/13
processing [1] 5/13
produced [1] 1/18
properly [1] 6/25
punitive [7] 3/25 6/2 7/11 7/23 9/6 12/2 14/14
punitives [1] 11/13
pursuant [1] 7/11
put [4] 3/20 10/6 14/8 15/19
putting [1] 16/16

## Q

question [2] 6/7 17/8
questions [2] 17/1 18/9
quoting [1] 8/25

## R

race [1] 9/4
raised [1] 11/25
raising [2] 7/21 7/22
ratio [8] 7/24 10/21 10/21 11/5 11/15 12/3 15/8 15/8
ratios [1] 15/13
RDR [2] 1/19 19/18
read [9] 5/1 6/23 12/7 15/16 15/22 15/23 15/25 16/2 16/7
reads [1] 6/24
real [2] 11/6 17/25
really [6] 8/10 11/10 11/10 12/1 17/16 18/1
Realtime [1] 1/20
reason [1] 13/23
recall [2] 13/17 13/18
reckless [3] 10/10 12/12 12/15
recklessly [1] 12/21
record [4] 15/14 15/16 16/11 19/12
recorded [1] 1/17
reduce [1] 4/11
reduced [3] 4/22 7/5 19/11
reduction [1] 7/10
regard [10] 4/1 4/9 5/12 6/12 7/5 8/16

**R**

**regard... [4]** 8/20 8/24 15/9 16/14
**Reid [2]** 2/3 3/12
**rely [1]** 16/10
**relying [1]** 15/18
**remittitur [7]** 4/3 4/8 4/8 4/9 5/3 6/6 7/6
**repeated [1]** 13/13
**reply [1]** 10/15
**reported [1]** 19/7
**Reporter [3]** 1/20 19/4 19/19
**REPORTERS [1]** 18/22
**reprehensibility [5]** 8/21 12/19 13/10 14/23 16/19
**reprehensible [6]** 8/23 9/17 14/8 14/9 14/16 14/17
**respectful [1]** 9/10
**respond [2]** 16/15 16/25
**response [1]** 8/25
**right [15]** 3/7 3/19 4/21 4/23 5/18 5/20 6/11 10/23 11/2 13/9 14/6 15/16 16/3 16/6 18/12
**risk [1]** 12/17
**Roberts [4]** 2/3 3/11 7/17 8/4
**rule [14]** 4/10 5/3 5/3 5/8 5/10 5/15 5/23 6/2 6/6 7/4 7/6 7/12 7/14 7/15
**Rule 50 [3]** 5/23 6/2 7/14
**Rule 59 [2]** 7/12 7/15

**S**

**safe [2]** 10/23 10/24
**safety [4]** 10/11 12/12 12/13 12/18
**said [3]** 9/15 13/21 19/10
**same [2]** 12/16 13/16
**say [9]** 5/11 6/3 7/9 8/6 10/5 15/11 15/12 16/23 17/25
**saying [2]** 9/15 12/23
**says [4]** 8/19 8/20 8/24 10/22
**scope [1]** 7/24
**score [1]** 16/19
**second [2]** 10/20 12/18
**see [5]** 6/21 9/4 11/6 11/18 12/23
**seem [1]** 13/17
**seemed [1]** 11/24
**set [1]** 13/12
**sets [1]** 15/1
**seven [5]** 15/6 16/24 16/24 16/24 17/9
**Severin [2]** 2/3 3/11
**she [6]** 5/2 6/10 6/12 6/23 6/24 14/12
**she's [2]** 6/11 6/11
**should [4]** 5/16 5/25 7/5 9/12
**shouldn't [1]** 11/24
**show [2]** 10/3 10/4
**side [3]** 11/23 15/4 16/17
**single [1]** 9/5
**sir [1]** 11/3
**so [19]** 4/6 4/25 7/6 7/18 7/20 8/2 8/8 8/9 11/18 12/24 14/13 14/20 14/23 15/5 16/2 16/6 17/9 18/3 18/7
**some [7]** 8/22 8/22 10/21 12/7 13/20 15/7 16/11
**somebody [6]** 10/3 10/3 12/19 14/11 14/12 15/1
**something [7]** 4/11 14/1 14/22 15/6 15/13 15/13 15/19
**Sometimes [1]** 3/20
**somewhere [1]** 9/25
**sorry [3]** 6/18 14/11 14/16
**sort [2]** 4/25 16/19
**specific [1]** 13/12
**started [1]** 12/7
**starting [1]** 3/9
**Stastny [2]** 2/6 3/16
**stated [1]** 4/20
**STATES [2]** 1/1 19/5
**statutory [2]** 6/25 7/3
**statutory-cap [1]** 6/25
**Stenograph [1]** 19/7
**stenography [1]** 1/17
**Steven [1]** 2/6
**sticking [1]** 3/23
**stiff [1]** 13/21
**stiff-armed [1]** 13/21
**still [3]** 8/2 15/12 17/25
**substantively [1]** 7/11
**suggest [1]** 5/15
**supported [1]** 9/6
**Supreme [2]** 10/22 10/25
**sure [5]** 5/6 5/14 7/16 8/5 17/12
**sustainable [2]** 7/3 7/22
**sustained [1]** 11/12
**SW [1]** 1/21
**Systems [1]** 1/20

**T**

**take [4]** 15/23 17/11 17/17 18/3
**takes [1]** 4/25
**talk [4]** 3/20 8/9 12/11 17/5
**talking [5]** 4/3 8/15 10/2 10/25 16/6
**talks [1]** 15/6
**target [2]** 12/24 13/10
**Ted [1]** 1/21
**tell [2]** 3/19 16/10
**ten [2]** 16/25 16/25
**terminated [1]** 13/6
**testifying [1]** 13/18
**Thank [7]** 3/18 6/18 17/3 17/12 18/12 18/17 18/18
**that [115]**
**that's [14]** 4/13 5/25 10/5 10/18 11/9 11/9 11/18 13/4 13/7 13/14 14/3 15/20 17/4 17/21
**their [2]** 8/25 10/15
**them [5]** 3/19 8/1 14/10 16/12 16/23
**then [8]** 10/20 16/7 16/15 16/24 17/13 18/1 18/7 18/8
**there [14]** 3/23 6/12 7/16 9/16 9/25 10/1 12/2 13/8 13/17 13/25 13/25 14/19 14/21 16/17
**there's [7]** 3/25 5/7 10/9 10/11 13/22 15/4 16/11
**therefore [1]** 14/13
**these [5]** 11/25 13/10 13/11 14/4 15/3
**they [7]** 7/18 12/8 12/9 13/5 13/7 13/12 15/25
**they're [5]** 7/21 7/22 13/24 16/2 16/14
**they've [1]** 15/19
**thing [3]** 10/20 12/18 13/16
**things [5]** 3/25 8/21 8/22 12/1 13/11
**think [37]**
**this [22]**
**those [7]** 8/2 10/17 12/6 12/7 14/9 15/15 16/18
**though [1]** 6/8
**thought [1]** 9/21
**three [1]** 14/18
**through [3]** 3/22 8/12 8/13
**Thursday [1]** 17/9
**time [2]** 9/24 13/20
**today's [1]** 11/14
**told [1]** 14/17
**too [1]** 8/8
**top [2]** 10/24 14/18
**tortious [1]** 10/10
**transcript [5]** 1/11 1/18 16/5 16/7 19/12
**trial [8]** 3/8 3/22 4/10 4/21 6/13 9/1 15/20 16/11
**trickery [1]** 14/2
**true [1]** 19/12
**trying [3]** 9/10 10/4 13/19
**Tuesday [6]** 17/14 17/17 17/19 18/3 18/4 18/6
**Turner [1]** 1/21
**two [3]** 3/25 12/1 16/10
**type [3]** 10/21 12/4 12/9
**types [1]** 10/17
**typewritten [1]** 19/11

**U**

**U.S [1]** 1/21
**under [18]** 4/9 5/8 5/9 5/16 5/17 6/1 6/2 6/5 6/5 6/12 7/1 7/3 7/4 7/6 7/12 9/16 12/20 14/3
**underneath [1]** 14/10
**understand [9]** 7/19 11/6 13/6 13/22 13/22 13/23 16/16 16/17 16/20
**understands [1]** 6/19
**unilateral [1]** 4/21
**UNITED [2]** 1/1 19/5
**until [9]** 17/10 17/11 17/13 17/14 17/19 18/3 18/5 18/8 18/8
**up [5]** 9/15 12/20 15/1 16/18 17/22
**upon [2]** 15/18 16/10
**us [1]** 4/25
**USA [2]** 1/6 19/9

**V**

**very [3]** 5/2 10/17 18/12
**via [1]** 7/5
**videos [3]** 15/25 16/3 16/4
**violate [3]** 12/20 14/24 15/1
**violated [2]** 9/3 12/21
**violates [2]** 14/10 14/22
**vulnerable [2]** 12/25 13/1

**W**

**want [7]** 8/10 9/24 11/6 12/5 12/9 12/24 17/10
**wanted [3]** 3/8 3/19 8/9
**wants [2]** 5/11 10/3
**warn [1]** 13/19
**warrant [1]** 7/23
**was [24]**
**wasn't [1]** 15/19
**way [10]** 4/3 4/5 4/20 6/12 8/12 12/5 14/8 14/14 15/7 16/16
**we [25]**
**we're [8]** 3/7 4/2 4/7 8/13 10/2 11/2 11/22 13/22
**we've [1]** 9/15
**Wednesday [2]** 18/5 18/6
**week [1]** 18/1
**weekend [1]** 17/20
**well [2]** 3/16 7/18

## W

**were [6]** 11/25 13/5 15/16 16/23 18/20 19/11
**Westlaw [1]** 5/2
**what [41]**
**What's [1]** 18/4
**when [4]** 10/2 12/11 15/22 16/6
**where [2]** 4/8 11/19
**Whereas [1]** 6/15
**Whereupon [1]** 18/20
**whether [11]** 6/21 6/25 7/2 7/5 9/16 10/8 10/9 12/11 12/19 12/24 13/13
**which [7]** 4/3 6/2 6/6 11/13 12/1 13/24 14/8
**while [1]** 12/17
**white [2]** 15/2 15/2
**who [10]** 10/3 13/5 13/18 13/18 14/5 14/10 14/17 14/22 14/22 15/1
**why [3]** 8/2 8/9 13/5
**wife [1]** 17/25
**Williams [1]** 10/16
**woman [1]** 13/18
**words [1]** 10/25
**worked [3]** 3/22 8/12 8/12
**working [1]** 8/13
**worth [2]** 5/6 5/6
**would [11]** 5/3 5/15 7/9 7/19 9/18 11/11 13/6 14/7 17/18 18/7 18/8
**wrong [2]** 4/13 5/8
**wrongfulness [1]** 13/20
**wrote [1]** 9/25

## Y

**Yeah [4]** 4/24 9/9 9/13 18/2
**yes [18]** 5/19 5/21 5/22 6/18 7/21 8/1 8/7 8/18 9/22 11/3 11/8 11/18 15/17 16/21 16/22 17/10 17/21 18/9
**you [71]**
**you'll [2]** 18/6 18/6
**you're [5]** 4/20 6/1 7/6 9/15 16/6
**you've [5]** 4/20 5/17 11/4 11/18 11/19
**you-all [7]** 3/24 4/18 8/15 11/20 16/15 16/24 18/12
**your [36]**
**Your Honor [26]**