**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Kenny Faulk,

Plaintiff,

Case No. 1:21-cv-1850-MLB

v.

Dimerco Express USA Corp.,

Defendant.

________________________________/

**OPINION & ORDER**

Severin Roberts, an attorney who formerly represented Plaintiff Kenny Faulk in this matter, asserts a lien against the judgment Faulk obtained following a jury trial in October 2023. (Dkt. 239.) Barrett & Farahany (B&F)—Roberts's former law firm and the firm continuing to represent Faulk in this matter—moves to quash the lien. (Dkt. 241.) The Court grants that motion.

## I. Background

Faulk retained B&F to sue Defendant Dimerco Express for race discrimination. (Dkt. 1.) B&F and Faulk entered into a contingency fee agreement. (Dkt. 259.) Faulk agreed to pay the firm 40% of "any

recovery on [his] behalf." (*Id.*) Roberts served as counsel for Faulk (with others) before, during, and after trial. (Dkt. 242-1 ¶ 2.) He had an agreement with B&F to receive 20.35% of any fees the firm recovered. (*Id.* ¶ 7.)

In October 2023, a jury returned a verdict in Faulk's favor, awarding him $3,390,000. (Dkt. 160.) Defendant moved for a new trial and for relief from the judgment. (Dkt. 175.) The Court denied that motion (Dkt. 220) and granted Plaintiff his attorneys' fees. (Dkt. 221). Defendant appealed. (Dkt. 224.) Roberts appeared as lead counsel on appeal. (Dkt. 242-1 ¶ 8.)

In September 2024, Roberts told B&F he was leaving the firm. (*Id.* ¶ 9.) Before he could, the firm fired him. (*Id.* ¶ 10.) In November 2024, he filed an attorney's lien under O.C.G.A. § 15-19-14(b) against "any judgment, settlement, or recovery" by Faulk in this case. (Dkt. 239.) B&F moved to quash. (Dkt. 241.) While that dispute was pending, the Eleventh Circuit affirmed the Court's denial of Defendant's motion for a new trial and its award of attorneys' fees. (Dkt. 244.)

## II. Discussion

O.C.G.A. § 15-19-14 specifies the types of attorney liens enforceable under Georgia law. It provides in pertinent part:

> (b) Upon actions, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens except tax liens; and no person shall be at liberty to satisfy such an action, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied. Attorneys at law shall have the same right and power over the actions, judgments, and decrees to enforce their liens as their clients had or may have for the amount due thereon to them.

O.C.G.A. § 15-19-14(b).

An attorney "who claims a lien [under O.C.G.A. § 15-19-14] must bring [himself or] herself clearly within the law, and the statute will not be construed so as to apply to any factual situation not strictly within its wording." *Gutter-Parker v. Pridgen*, 601 S.E.2d 707, 708 (Ga. Ct. App. 2004). "The validity and enforceability of an attorney's lien, and the amount of fees to award the attorney enforcing the lien, are matters for the trial court to decide." *Tolson v. Sistrunk*, 772 S.E.2d 416, 418 (Ga. Ct. App. 2015). Because O.C.G.A. § 15-19-14 is "in derogation of the common law," courts must "strictly construe" it "against the lien claimant, and strict compliance is required in order to enforce [it]." *Id.*

at 421; *Eastside Recovery, LLC v. Calhoun*, 890 S.E.2d 135, 141 (Ga. Ct. App. 2023) (quoting *Benning Constr. Co. v. Dykes Paving & Constr. Co.*, 426 S.E.2d 564 (Ga. 1993)).

B&F moves to quash, arguing (1) Roberts cannot assert a lien against Faulk's recovery based on Faulk's fee agreement *with B&F* and (2) Roberts cannot assert a lien for fees under a quantum meruit theory because Faulk never terminated him. (Dkt. at 5–7.) In support of its arguments, B&F emphasizes that only its agreement with Faulk can support a lien. (*Id.* at 5-7.) It also argues no Georgia case recognizes an attorney's right to assert a lien against a client's recovery under quantum meruit where the attorney was terminated by his firm, not the client. (*Id.* at 8–11.) B&F insists Roberts must assert any claim for a share in the recovery against it, not Faulk. (*Id.* at 4–5.) Roberts counters that he can assert a lien under his "express agreement [ ] to receive 20.35% of the contingency fees in this case," or, alternatively, that he can do so under a theory of quantum meruit. (Dkt. 242 at 13–17.) The Court disagrees with Roberts.

Roberts repeatedly obscures the fact that his "express agreement" to receive a 20.35% contingency fee is *with B&F* not Faulk. (Dkt. 242-1

¶ 7.) Roberts has cited no authority suggesting an attorney can assert a lien under O.C.G.A. § 15-19-14 against a client's recovery because of an agreement the attorney had with his or her law firm, essentially an employment agreement. The Court strictly construes the Georgia lien statute against Roberts and, in the absence of authority extending the statute to enforce an intra-firm fee agreement, concludes Roberts's agreement with B&F cannot support such a lien. *See Eastside Recovery, LLC*, 890 S.E.2d at 141. His agreement with B&F may establish rights between him and B&F, but nothing in it gives him a right to encumber Faulk's recovery.

Even if Roberts's intra-firm agreement could support a lien against Faulk's recovery, the Court still would not grant it here since Roberts withdrew from that agreement before Faulk obtained his recovery. (*See* Dkt. 242-3 (Plaintiff's motion to withdraw Roberts as counsel of record, dated March 19, 2025).) When an attorney's compensation is contingent, "the happening of the contingency is a condition precedent to the right of the attorney to recover for his services," meaning an attorney has no right to a contingency fee until the client obtains the recovery. *Ellerin & Assocs. v. Brawley*, 589 S.E.2d 626, 629 (Ga. Ct. App. 2003). Where—as

here—the contingency is a "recovery" of money, the contingency does not occur until the client collects the money. *Id.* ("no sum had been collected by [clients] at the time [they] terminated the attorneys' representation, so the contingency had not yet occurred."); *see also May v. May*, 349 S.E.2d 766, 767 (Ga. Ct. App. 1986) ("[T]he contingent fee contract provided that the attorney receive a percentage of all sums recovered . . . 'all sums recovered,' therefore means just that. The attorney was entitled to receive 25% of the monies he recovered, not 25% of the judgment. . . . The lien attached to the cause of action only to the extent of the sums collected"). Thus, where a client terminates an attorney (or an attorney withdraws) "after a judgment is obtained but before money is recovered pursuant to the judgment," the contingency of the client's "recovery" has not yet occurred. *Greer, Klosik & Daugherty v. Yetman*, 496 S.E.2d 693, 694–95 (Ga. 1998) (holding law firm terminated after entry of judgment, but before client recovered, could not assert lien under O.C.G.A. § 15–19–14 based on contingency fee agreement because "no sum had been recovered at the time the [client] terminated [law firm's] representation, so the contingency had not occurred.").

That's what happened here. B&F's had a fee agreement with Faulk contingent upon his recovery from Dimerco.[1] (Dkt. 259.) Roberts in turn had an agreement with B&F contingent upon its recovery from Faulk. (Dkt. 242-1 ¶ 2.) Faulk did not "recover" any sum until July 2026, nearly two years after B&F fired Roberts and he withdrew as counsel of record. *See Ellerin*, 589 S.E.2d at 629; *Yetman*, 496 S.E.2d at 694–95; (Dkts. 190 (Court's order staying execution of judgment pending post-trial motions and appeal); 257 (Defendant's notice of satisfaction of judgment, dated July 14, 2026).) Neither Roberts's agreement with his firm nor his firm's agreement with Faulk could have provided either Roberts or the firm a vested right to any of Faulk's recovery until after Roberts left the firm. That timing alone prevents him from asserting a lien against that contingency payment. *See Yetman*, 496 S.E.2d at 694–95. Instead, as the Court in *Yetman* explained, "quantum meruit is the proper remedy

[1] Roberts's response simply assumes "judgment" was the "contingent event" in Faulk's fee agreement, even though he admits he "does not recall the precise language of the fee agreement and whether the contingency attaches to judgment, recovery, or both." (Dkt. 242 at 2, 13.) Because this is a critical detail, the Court ordered B&F to provide a copy of Faulk's fee agreement. (Dkt. 258.) B&F did so, which revealed the contingent event is B&F's "recovery" on behalf of Faulk. (Dkt. 259.)

for an attorney who is discharged before the occurrence of the contingency specified in a contingent fee contract." *Yetman*, 496 S.E.2d at 694. Roberts is thus relegated to a theory of quantum meruit. *See Yetman v. Gilbert Corp. of Delaware,* 483 S.E.2d 878, 881 (Ga. Ct. App. 1997) ("The discharge of the attorney by the client does not defeat the attorney's right to be paid; the right to receive compensation comes, not under the contract of employment, which is at an end, but under quantum meruit which is protected by the attorney's lien statute.").

Allowing Roberts to assert an attorney's lien under quantum meruit, however, would require the Court to extend Georgia law into uncharted territory. The Court has found no Georgia case—and Roberts has not identified one—permitting a terminated attorney to assert an attorney's lien under quantum meruit where the attorney was terminated by a law firm rather than *by a client*. To the contrary, Georgia courts have only recognized quantum meruit in this context where "the client prevents [a] contingency from happening"—typically, by terminating the attorney before collecting a sum that would have entitled

the attorney to a contingency fee.[2] *Yetman*, 496 S.E.2d at 694; *see, e.g.*, *Ellerin & Assoc.*, 589 S.E.2d at 629 ("When a contingent fee arrangement exists between a client and an attorney and the client prevents the contingency from happening, the attorney is entitled to reasonable attorney's fees for his services that have been rendered on behalf of the client. Thus, although prevented from recovering under the contract, the attorney still has [a] remedy in quantum meruit."); *Overman v. All Cities Transfer Co.*, 336 S.E.2d 341, 342 (Ga. Ct. App. 1985) (same); *McBride v. McMillian*, 2015 WL 13359893, at *3 (N.D. Ga. May 1, 2015) (same); *Flip Face U.S.A., LLC v. Alexandria Moulding, Inc.*, 2020 WL 10700150, at *3 (N.D. Ga. May 8, 2020) (same).

Again, the Court is aware of no authority suggesting an attorney terminated by his law firm employer—rather than his client—before the

---

[2] In *Sutherland v. Hammers*, the Court of Appeals refused "to adopt a bright-line rule that attorneys who voluntarily withdraw from contingency fee cases are never authorized to recover fees on a quantum meruit basis." 916 S.E.2d 493, 497 (Ga. Ct. App. 2025). In that case, the Court allowed a lawyer to do so when he felt compelled to withdraw on the eve of settlement after losing his client's confidence through no fault of his own. *Id.* at 498. Those are not the facts here.

occurrence of a contingency can file an attorney's lien on a theory of quantum meruit. That's because, where a law firm terminates an attorney, it is the law firm, not the client, that "prevents the contingency from happening." *Yetman*, 496 S.E.2d at 694.

Limiting quantum meruit to situations in which the *client* frustrates the happening of a contingency makes sense. It prevents the inequity of a "client [ ] benefitting from representation but avoiding payment by precluding the happening of the contingency through his conduct." *Sutherland v. Hammers*, 916 S.E.2d 493, 497 (Ga. Ct. App. 2025). And it requires a lawyer whose firm terminated him (or her) to fight with the firm about any financial obligations, leaving the client out of the dispute. Expanding quantum meruit to attorneys fired by their firms would also create perverse incentives, including the possibility an attorney could manufacture his or her termination to claim a larger share of a contingency fee than he or she might have received under an agreement with the firm. Roberts recognizes this possibility, saying "[o]n a quantum meruit basis, [his] allocation of the fee could be higher than the agreed percentage of the total fee, given his proportional role in the

representation of [Faulk] and work performed on behalf of [Faulk]." (Dkt. 242 at 14.) The Court refuses to extend Georgia law this far.[3]

It seems Roberts has been wronged. But he must seek recourse from the party that wronged him: B&F. B&F knows that. (Dkts. 241 at 3, 8–9; 243 at 10–11 ("Mr. Roberts is free to seek the value of his legal services provided in this case directly from B&F, pursuant to the employment agreement he had with B&F.").) Georgia's lien statute does not allow him to claim a lien on Faulk's recovery because of his dispute

[3] None of Roberts's other arguments or authorities require a different outcome. He devotes much of his response to arguing his agreement with B&F is analogous to a joint representation agreement between two law firms where only one law firm has a direct fee agreement with the client. (*See* Dkt. 242 at 8–14.) Citing *Wooten v. Ford Motor Co.*, *R.D. Legal Funding Partners, LP v. Robinson*, and *Kirschner & Venker P.C. v. Taylor & Martino P.C.,* he says O.C.G.A. § 15-19-14(b) permits him to assert a lien despite the absence of a direct fee agreement. But those cases don't help him. Indeed, they apply the exact rubric as this Court. Both *Wooten* and *Kirschner & Venker* involved attorneys who were retained as co-counsel with the clients' consent and who asserted liens when their clients terminated their representation before recovery of the contingency fee. 2025 WL 1899678, at *1; 627 S.E.2d at 113. But again, that did not happen here. Faulk never fired Roberts. And, in *Robinson*, the client recovered on his claim during the attorney's representation that arose from a joint representation agreement. Again that did not happen here.

with B&F. *See Flip Face U.S.A.*, 2020 WL 10700150, at *5 n. 4 ("[Former attorney's] remedy, if any there be, lies with an action against [his former firm] to recover money owed to him under his compensation agreement or any other agreement he may have made with [the firm] with respect to potential fees that could be recovered in this case subsequent to [him] leaving the law firm. An attorney cannot pursue a lien under O.C.G.A. § 15-19-14 for unpaid salary because the lien statute is intended to aid in the recovery of attorney's fees, not employee compensation.").

## III. Conclusion

The Court **GRANTS** B&F's Motion to Quash Attorney's Lien (Dkt. 241) and **TERMINATES** Roberts's lien (Dkt. 239).

**SO ORDERED** this 17th day of September, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE